THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
2039 Shattuck Avenue, Suite 308
Berkeley, California  94704
Telephone:  (510) 788-5100
Facsimile:  (510) 291-3226
E-mail:     sgt@tidricklaw.com

Attorneys for Individual and Representative
Plaintiff George Abrams

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ABRAMS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPCS COMMUNICATIONS, Inc.; METROPCS WIRELESS, Inc.; T-MOBILE US, Inc.; and Does 1-100,<br><br>Defendants. | Civil Case Number: 3:13-cv-02878-JSW<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (1) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND (2) TO STRIKE THE CLASS ALLEGATIONS**<br><br>Date:      January 17, 2014<br>Time:       9:00 a.m.<br>Dept.:     Courtroom 11<br>           450 Golden Gate Avenue, 19th Floor<br>           San Francisco, California<br>Judge:    The Honorable Jeffrey S. White<br><br>Complaint filed:  June 21, 2013<br><br>Amended complaint filed:  July 26, 2013 |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

SUMMARY OF ARGUMENT ...................................................................................... viii

ISSUES TO BE DECIDED ............................................................................................ viii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................... 2

   I. Defendants' Positions on All of Plaintiff's Causes of Action Are Based Upon an

      Incorrect Description of the "Terms and Conditions" ............................................... 2

   II. Plaintiff Has Stated Claims for Breach of Contract and Declaratory Relief ............. 2

      A. The Complaint States a Valid Breach of Contract Claim ............................. 2

      B. Defendants Rely on a Portion of the Terms and Conditions That Is

         Not Applicable to the Facts of This Case and Plaintiff's Claims ................. 4

      C. "Termination" and "Suspension" Have Different Meanings ........................ 5

      D. Defendants Have Failed to Cure Their Breach ............................................. 7

      E. Defendants' Attempt to Blame the Consumer Lacks Merit .......................... 8

   IV. Plaintiff Has Stated a Cause of Action for Fraud ..................................................... 9

      A.  Plaintiff's Complaint Alleges Sufficient Facts in Support of His Fraud Claim 9

      B.  Defendants' Assertions Lack Merit .............................................................. 11

   V. Plaintiff Has Stated Claims Under the CLRA, FAL, and UCL ................................. 11

   VI. The Court Should Deny Defendants' Request to Strike the Class Allegations ........ 12

      A. Plaintiff Has Properly Pled Class Allegations ............................................. 12

      B. The Authorities Defendants Rely Upon Are Inapposite ............................... 14

   CONCLUSION ............................................................................................................... 15

ii

TABLE OF AUTHORITIES

CASES                                                                                        PAGE(S)

*Alder v. Drudis,*
     30 Cal. 2d 372 (1947) ............................................................................. 9

*Allan v. Snow Summit, Inc.,*
     51 Cal. App. 4th 1358 (1996) ................................................................ 3-4

*Ashburn v. Miller,*
     161 Cal. App. 2d 71 (1958)..................................................................... 10

*Avilez v. Pinkerton Gov't Servs.,*
     286 F.R.D. 450 (C.D. Cal. 2012) ........................................................... 13

*B.C. Richter Contracting Co. v. Continental Casualty Co.,*
     230 Cal. App. 2d 491 (1964)................................................................... 9

*Bittinger v. Tecumseh Prods Co.,*
     123 F. 3d 877 (6th Cir. 1997)............................................................ 12, 13

*BJC Health System v. Columbia Casualty Co.,*
     478 F. 3d 908 (8th Cir. 2007)................................................................. 14

*Bowen v. First Family Fin. Servs., Inc.,*
     233 F. 3d 1331 (11th Cir. 2000).............................................................. 13

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.,*
     971 F. 2d 272 (9th Cir. 1992).............................................................. 4, 6

*Chodos v. W. Publ. Co.,*
     292 F. 3d 992 (9th Cir. 2002).................................................................. 9

*Coleman v. GMAC,*
     220 F.R.D. 64 (N.D. Tenn. 2004) .......................................................... 12

*Collins v. Gamestop Corp.,*
     2010 U.S. Dist. LEXIS 88878 (N.D. Cal. Aug. 6, 2010)........................ 14

*Continental Airlines Inc. v. McDonnell Douglas Corp.,*
     216 Cal. App. 3d 388 (1989)................................................................... 10

*Continental Mfg. Corp. v. Underwriters at Lloyds London,*

    185 Cal. App. 2d 545 (1960)................................................................. 6

*Davis v. Four Seasons Hotel Ltd.,*

    2011 U.S. Dist. LEXIS 112386 (D. Haw. Sept. 30, 2011) ........................ 13

*Engalla v. Permanente Medical Group, Inc.,*

    15 Cal. 4th 951 (1977) ...................................................................... 10

*Finnan v. L.F. Rothschild & Co.,*

    726 F. Supp. 460 (S.D.N.Y. 1989)......................................................... 13

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.,*

    109 Cal. App. 4th 944 (2003) ................................................................ 7

*Guidiville Band of Pomo Indians v. NGV Gaming, LTD.,*

    531 F. 3d 767 (9th Cir. 2008)................................................................. 6

*Hamilton v. Dick,*

    254 Cal. App. 2d 123 (1967)................................................................. 7

*Herrera v. LCS Fin. Servs. Corp.,*

    274 F.R.D. 666 (N.D. Cal. 2011) ......................................................... 12

*In re Apple & AT&T Antitrust Litig.,*

    826 F. Supp. 2d 1169 (N.D. Cal. 2011) ................................................ 15

*In re Cheryl E.,*

    161 Cal. App. 3d 587 (1984)................................................................ 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*

    2011 U.S. Dist. LEXIS 55033 (N.D. Cal. May 9, 2011) .......................... 13

*Lang v. Todd,*

    148 Neb. 726, 732 (Neb. 1947)............................................................. 9

*Lortz v. Connell,*

    273 Cal. App. 2d 286 (1969)................................................................. 3

*Lozano v. AT&T Wireless Servs.,*

    504 F. 3d 718 (9th Cir. 2007)................................................................ 15

iv

*May v. Nation Safe Drivers, Inc.,*
> 2010 U.S. Dist. LEXIS 135671 (D. Minn. Dec. 22, 2010)...................................... 15

*McGough v. Pine Bluff Sch. Dist.,*
> 79 Ark. App. 235 (Ark. Ct. App. 2002) ................................................................ 7

*Meyers v. Guarantee Sav. & Loan Assn.,*
> 79 Cal. App. 3d 307 (1978)................................................................................ 4, 14

*Midland Funding, LLC v. Brent,*
> 2010 U.S. Dist. LEXIS 117501 (N.D. Ohio 2010) ................................................. 13

*Mora v. Harley-Davidson Credit Corp.,*
> 2012 U.S. Dist. LEXIS 49636 (E.D. Cal. Apr. 6, 2012)......................................... 13

*Murphy v. DirecTV, Inc.,*
> 724 F. 3d 1218 (9th Cir. 2013)............................................................................ 5, 14

*Nagy v. Nagy,*
> 210 Cal. App. 3d 1262 (1989).............................................................................. 10

*Nathanson v. Murphy,*
> 132 Cal. App. 2d 363 (1955)................................................................................ 10

*Pablo v. Servicemaster Global Holdings, Inc.,*
> 2011 U.S. Dist. LEXIS 87918 (N.D. Cal. Aug. 9, 2011)......................................... 14, 15

*Safeco Ins. Co. v. Robert S.,*
> 26 Cal. 4th 758 (2001) ....................................................................................... 5, 14

*SkySports v. Superior Court,*
> 201 Cal. App. 4th 1363 (2011) ............................................................................ 15

*Tastee Treats, Inc. v. United States Fid. & Guar. Co.,*
> 2010 U.S. Dist. LEXIS 125499 (S.D. W. Va. Nov. 29, 2010) ................................. 5

*Thorpe v. Abbott Labs., Inc.,*
> 534 F. Supp. 2d 1120 (N. D. Cal. 2008) .............................................................. 14

*Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.,*
> 572 F.3d 771 (9th Cir. 2009)............................................................................... 7

v

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (1) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND
(2) TO STRIKE THE CLASS ALLEGATIONS – *Abrams v. MetroPCS Communications, Inc. et al.*, 3:13-cv-02878-JSW

*Universal Bank v. Northland Ins. Co.*,

 8 Fed. Appx. 784 (9th Cir. 2001) ................................................................. 6

*Vasquez v. Superior Court of San Joaquin County*,

 4 Cal. 3d 800 (1971) ...................................................................................... 10

*Victoria v. Superior Court*,

 40 Cal. 3d 734 (1985) ................................................................................. 4, 14

*Walnut Producers of California v. Diamond Foods, Inc.*,

 187 Cal. App. 4th 634 (2010) ...................................................................... 15

*Werdebaugh v. Blue Diamond Growers*,

 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) ........................... 14

*Whitney Inv. Co. v. Westview Dev. Co.*,

 273 Cal. App. 2d 594 (1969) ...................................................................... 8, 9

*Wilke v. Coinway, Inc.*,

 257 Cal. App. 2d 126 (1967) ........................................................................ 10

*Wolford v. Equitable Life Ins. Co.*,

 162 Pa. Super. 259 (Pa. Super. Ct. 1948) ..................................................... 7

*Zepeda v. United States Immigration & Naturalization Serv.*,

 753 F. 2d 719 (9th Cir. 1983) ....................................................................... 13


STATUTES                  PAGE(S)

Cal. Civ. Code § 1572 ......................................................................................... 10

Cal. Civ. Code § 1638 ........................................................................................... 6

Cal. Civ. Code § 1639 ........................................................................................... 6

Cal. Civ. Code § 1641 ........................................................................................... 6

Cal. Civ. Code § 1644 ........................................................................................... 6

Cal. Civ. Code § 1689 ........................................................................................... 9

Cal. Civ. Code § 1691 ........................................................................................... 9

Cal. Civ. Code § 1710 ......................................................................................... 10

Cal. Code Civ. Proc § 1856.................................................................................... 4

Fed. R. Civ. P. 23 ................................................................................................... 13


SECONDARY SOURCES                                                    PAGE(S)

BLACK'S LAW DICTIONARY (3d pocket ed. 2006)............................................... 5

THE CONCISE OXFORD DICTIONARY (10th ed. 1999) ........................................ 5

WEBSTER'S DICTIONARY (1978 ed.)...................................................................... 5

RESTATEMENT (SECOND) OF CONTRACTS............................................................ 6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (1) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND
(2) TO STRIKE THE CLASS ALLEGATIONS – *Abrams v. MetroPCS Communications, Inc. et al.*, 3:13-cv-02878-JSW

## SUMMARY OF ARGUMENT

Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of himself and all similarly situated individuals who paid for, but did not receive, a full thirty (30) days of cellular telecommunications service.  Defendants' motion to dismiss and to strike misinterprets Plaintiff's claims, the contract, and existing law.  It should be denied.

### ISSUES TO BE DECIDED

**1.  Whether Plaintiff's complaint states claims for relief; and**

**2.  Whether to strike Plaintiff's class allegations.**

1.     The fundamental question presented by Plaintiff's cause of action for breach of contract is whether Defendants are obliged to provide a month (*i.e.*, thirty (30) days) of telecommunication services upon the customer's payment of a monthly fee after Defendants have *suspended* the customer's service.  Defendants' brief relies upon a clause in the Terms and Conditions that they claim addresses what shall occur "*in the event of late payment*" but those words appear nowhere in the Terms and Conditions.  The clause that Defendants rely upon governs situations in which a customer's service is ***terminated***, whereas this case concerns consumers whose service is ***suspended***.  The clause indicates that, after ***termination***, if a customer pays the regular monthly fee, the customer will receive fewer days of service for that month.  In contrast, there is no language in the Terms and Conditions, Start of Service Form, or brochures indicating that, after ***suspension***, if a customer pays the regular monthly fee, the customer will receive fewer days of service for that month.  According to the plain language of the contract, Defendants are bound by their promise to provide a month of service for the fixed monthly fee.  Several fundamental principles of contract interpretation require this interpretation of the contract.  The error in Defendants' characterization of the Terms and Conditions is fatal to Defendants' assertions on each and every of Plaintiff's causes of action.

2.     Defendants' assertion that a class cannot be maintained is incorrect.  At a minimum, Plaintiff can adequately represent all who, like himself, opted out of the arbitration agreement and suffered similar injury.  Moreover, the question of the enforceability of the arbitration agreement is not ripe.  Finally, a motion to strike class allegations is premature at the pleadings stage.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF FACTS**

This case arises from breach of customer contracts, false and misleading advertising, and illegal and unfair business acts and practices by MetroPCS Wireless, Inc. ("MetroPCS Wireless") and by its related corporate entities MetroPCS Communications, Inc. and T-Mobile US, Inc. (collectively "Defendants"). *See* Amended Complaint (Docket No. 4) ("1AC") ¶¶ 1, 10-12, 23 & n.1, 32.

For many years, MetroPCS Wireless has advertised, offered for sale, and sold cellular phone services on a pre-paid ("pay in advance") basis, and has conducted an advertising campaign representing that it provides a month (*i.e.*, thirty (30) days) of service for a fixed price.  1AC ¶¶ 2, 15, 16.  That ad campaign is false and misleading.  It fails to disclose that if a customer pays the service fee for a month of service after a payment date, the customer does not receive a full month of service.  That occurs as follows.  If the customer does not pay for a month of service by a monthly payment date, then the customer's service is suspended.  *Id.* ¶¶ 2, 20.  If within 30 days of suspension the customer pays the fee for a month of service, then MetroPCS Wireless restores the customer's service but does not adjust the bill cycle and next monthly payment date.  *Id.* ¶ 21.  As a result, such a customer pays for a month of service but receives less than a month of service.  *Id.* ¶¶ 2, 21, 53.  Thus, the campaign advertising 30 days of service for a fixed price is false.  *Id.*  It is also a breach of contract.  *Id.* ¶¶ 25, 44.

MetroPCS has internal policies and practices that are different for a customer whose service is ***suspended*** versus a consumer whose service is ***terminated***.  *See* 1AC ¶¶ 20, 21. The allegation at paragraph 20 of the amended complaint is based in part on Defendant's Form 10-K filed with the Securities and Exchange Commission, which states:

> Our customers must pay their monthly service amount by the payment date or their service will be ***suspended***, or hotlined, and the customer will not be able to make or receive calls on our network. . . .  There is no service grace period. Any call attempted by a hotlined customer is routed directly to our interactive voice response system and customer service center in order to arrange payment. If the customer pays the amount due within 30 days of the original payment date then the customer's service is restored. If a hotlined customer does not pay the amount due within 30 days of the payment date the account is ***disconnected*** and counted as churn. Once an account is disconnected we may charge a reconnect fee upon reactivation to reestablish service

1

1    and the revenue associated with this fee is deferred and recognized over the estimated
     life of the customer.

2    *See* METROPCS COMMUNICATIONS, INC. Form 10-K for fiscal year ended

3    December 31, 2011, available at http://www.sec.gov/Archives/edgar/data/1283699/-

4    000144530512000521/metropcs10k-2011.htm (emphasis added).  This case concerns not

5    customers whose service is terminated, but rather customers whose service is ***suspended***.

6                                              **ARGUMENT**

7    **I.      Defendants' Positions on All of Plaintiff's Causes of Action Are Based Upon an**

8    **Incorrect Description of the "Terms and Conditions."**

9            Defendants' brief attempts to mislead the Court with regard to what the Terms and

10   Conditions state.  Defendants assert in their brief:  "the Terms and Conditions disclosed to

11   [Plaintiff] that *in the event of his late payment*: **your service cycle anniversary date will not**

12   **change resulting in fewer days of service for that month**."  *See* Defendants' Notice of Motion

13   and Motion (Docket No. 16) ("MTD") at 1:11-14 (italics and underlining added).

14           In fact, the Terms and Conditions do not specify that ***in the event of late payment*** "your

15   service cycle anniversary date will not change resulting in fewer days of service for that month."

16   Rather, the quoted language describes what will occur "[i]f your service is ***terminated***."  The

17   following is a more complete quotation of the provision that Defendants cite:

18           If we accept a late or partial payment . . . we do not waive our rights to **suspend or**
             **terminate** your Service or any other rights we may have. **If your Service is**
19           **terminated and you promptly pay amounts that are overdue, MetroPCS, in**
             **its sole discretion, may reconnect your Service** after you have paid any
20           reconnection fees we have imposed. **In such case, your service cycle**
             **anniversary date will not change resulting in fewer days of service for that**
21           **month.**

22   1AC Ex. B at 8 (Docket No. 4 at 37 of 83) (emphasis added).  Thus, the clause in the Terms and

23   Conditions that Defendants rely upon governs situations in which a customer's service is

24   ***terminated***, whereas this case concerns consumers whose service is ***suspended***. The error in

25   Defendants' characterization of the Terms and Conditions is fatal to Defendants' assertions on

26   each and every of Plaintiff's causes of action.

27   **II.     Plaintiff Has Stated Claims for Breach of Contract and Declaratory Relief.**

28           **A.      The Complaint States a Valid Breach of Contract Claim.**

2

The complaint alleges facts sufficient to state a cause of action for breach of contract. The elements to be pleaded in an action for breach of contract are: (1) the existence of the contract; (2) plaintiff's performance of the contract or excuse for non-performance; (3) defendant's breach; and (4) the resulting damage to the plaintiff. *Lortz v. Connell,* 273 Cal. App. 2d 286, 290 (1969). The complaint alleges a contract. *See* 1AC ¶¶ 23 & Ex. B, 24-28, 41, 43. The complaint alleges that Plaintiff performed, *id.* ¶¶ 27, 35, 42, that Defendants breached, *id.* ¶¶ 36, 44, and that damage to Plaintiff resulted. *Id.* ¶¶ 36, 45.

Specifically, Defendants have agreed to provide a month of service (*i.e.*, thirty (30) days) for a fixed monthly fee as stated in the Terms and Conditions and the other documents that are incorporated by reference into the Terms and Conditions, specifically, the Start of Service Form and brochures. *See id.* ¶¶ 23-25. *See also* Docket No. 4, Ex. B, at 31 of 83 ("When you initiate Service with MetroPCS, you may receive a Start of Service form, this Agreement, and a brochure detailing the coverage available in your service area. These materials are part of your Agreement with MetroPCS."); *id.* ("This Agreement, the Start of Service form, if any, the terms included in the Rate Plan brochure(s) describing your plan and services, if any, terms of service for products and services not otherwise described herein that are posted on applicable MetroPCS websites or in applicable product or service brochures, if any, and any documents expressly referred to herein or therein, if any, make up the complete agreement between you and us"). Defendants ***have*** included language indicating that, after ***termination***, if a customer pays the regular monthly fee, the customer will receive fewer days of service for that month. In contrast, there is no language in the Terms and Conditions, Start of Service Form, or brochures indicating that, after ***suspension***, if a customer pays the regular monthly fee, the customer will receive fewer days of service for that month. Defendants' inclusion of such language for the termination scenario, but not the suspension scenario, means that in the suspension scenario Defendants are bound by their promise to provide a month of service for the fixed monthly fee. Thus, Defendants' failure to provide a month (*i.e.*, thirty (30) days) worth of service after suspended accounts are restored constitutes a breach of contract. *See Allan v. Snow Summit, Inc.*, 51 Cal. App. 4th 1358, 1375 (1996) ("a contract of

3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (1) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND (2) TO STRIKE THE CLASS ALLEGATIONS – *Abrams v. MetroPCS Communications, Inc. et al.*, 3:13-cv-02878-JSW

adhesion is *fully enforceable* according to its terms . . . unless certain other factors are present which, under established legal rules--legislative or judicial--operate to render it otherwise") (emphasis in original).  *See also Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992) ("All the parties agree that the written contract is a completely integrated agreement. Thus, parol evidence of terms not specifically included in the written contract is not admissible."); Cal. Code Civ. Proc § 1856(b) (parol evidence rule).[1]

If the Court finds that the written agreement is ambiguous on this issue, the Court must construe such ambiguity against the Defendants, both because they drafted the contract and also because they presented it to consumers on a "take it or leave it" basis.  *See* 1AC ¶ 17; *Victoria v. Superior Court*, 40 Cal. 3d 734, 745 (1985) ("It is a well-settled rule of law that ambiguities in a written contract are to be construed against the party who drafted it.") (citations omitted); *Meyers v. Guarantee Sav. & Loan Assn.*, 79 Cal. App. 3d 307, 312 (1978) (ambiguities in a contract of adhesion must be construed against the drafter).

**B.      Defendants Rely on a Portion of the Terms and Conditions That Is Not Applicable to the Facts of This Case and Plaintiff's Claims.**

Defendants assert that Plaintiff's claims for breach of contract and declaratory relief fail because "The Terms and Conditions specify that ***in the event of late payment***, Plaintiff's service cycle date would not change, with the result that Plaintiff would receive fewer days of service."  MTD at 9:8-9.  Defendants then quote the Terms and Conditions as follows:

> If your Service is terminated and you promptly pay amounts that are overdue, MetroPCS, in its sole discretion, may reconnect your Service. * * * **In such case, your service cycle anniversary date will not change resulting in fewer days of service for that month.**

MTD at 9:10-12 (citing Ex. B at 8) (emphasis in original).

As noted above, Defendants mischaracterize the Terms and Conditions.  The portion Defendants rely upon governs situations in which a customer's service is ***terminated***, whereas this case concerns consumers whose service is ***suspended***.  *See* 1AC ¶¶ 2, 20, 21, 30, 34.

---

[1] The agreement provides, in relevant part: "This Agreement, the Start of Service form, if any, the terms included in the Rate Plan brochure(s) describing your plan and services . . . make up the complete agreement between you and us . . . ."  *See* 1AC ¶ 25; Docket No. 4 at 37 of 83.

4

C.     **"Termination" and "Suspension" Have Different Meanings.**

Defendants admit in their moving papers that "MetroPCS suspended [Plaintiff's] service."  MTD at 1:25.  Defendants may later try to assert there is no difference between service ***termination*** and service ***suspension***.  That would be unpersuasive for several reasons.

First, the Terms and Conditions specify: "If your Service is ***terminated*** and you promptly pay amounts that are overdue" and MetroPCS reconnects the service, "***In such case***, your service cycle anniversary date will not change resulting in fewer days of service for that month."  1AC, Ex. B at 8 (Docket No. 4 at 37 of 83).  The language "[i]n such case" limits the application of the provision to the specified circumstances.  Also, the fact that this provision specifies ***termination*** but not suspension further indicates that the provision does not apply to situations in which service is restored after ***suspension***.  In an analogous case, the U.S. Court of Appeals for the Ninth Circuit has applied the principle of *expressio unius exclusio alterius est* to interpret contractual language as not including that which was not specified.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).  *See also Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) (referring to "the fundamental principle that in interpreting contracts . . . courts are not to insert what has been omitted.").  Similarly here, if MetroPCS Wireless had intended for the provision to apply to situations in which service was restored after ***suspension***, it could easily have specified that, but it did not.

Second, the plain meanings of suspension and termination are distinct.   The Concise Oxford Dictionary defines "terminate" as "bring to an ***end***," and defines "suspend" as "halt ***temporarily***."  THE CONCISE OXFORD DICTIONARY (10th ed. 1999), at 1443, 1479 (first definitions of each word) (emphasis added).  *See also Tastee Treats, Inc. v. United States Fid. & Guar. Co.*, 2010 U.S. Dist. LEXIS 125499 (S.D. W. Va. Nov. 29, 2010) ("The definition of 'suspend' is variously 'to cause to stop ***temporarily'*** or 'to set aside or make ***temporarily*** inoperative.' Webster's Dictionary 135 (1978 ed.); *see also* Black's Law Dictionary 696 (3d pocket ed. 2006) (defining 'suspension' as '[t]he act of ***temporarily*** delaying, interrupting, or terminating something'") (emphasis added).  The U.S. Court of Appeal for the Ninth Circuit has held in interpreting a contract under California law, a court must first look to the plain

5

meaning of the contract's language.  *Guidiville Band of Pomo Indians v. NGV Gaming, LTD.*, 531 F.3d 767, 787-788 (9th Cir. 2008) (citing Cal. Civ. Code §§ 1638, 1639, 1644).  *See also Universal Bank v. Northland Ins. Co.*, 8 Fed. Appx. 784, 786 (9th Cir. 2001) ("starting place for contract interpretation is plain meaning of contractual language").  The average customer would not interpret the two words, suspension and termination, as meaning the same thing.

Third, Defendants use the terms "suspension" (or "suspended") and "termination" (or "terminated") in different places in the Terms and Conditions to mean different things.  The Terms and Conditions include various other provisions specific to termination, but not suspension, for example: "If you or MetroPCS **terminate** your MetroPCS monthly or weekly Service for any reason, any remaining balance in your MetroConnect account will be forfeited and will not be refunded to you." (*see* 1AC, Ex. B, Docket No. 4 at 34 of 83) (emphasis added); "In addition, you may **terminate** Service at any time by notifying us in writing at the address listed below in the 'Notices' section."  (*see id.* at 38 of 83) (emphasis added). Moreover, Defendants use the terms "suspension" (or "suspended") and "termination" (or "terminated") sequentially at various places in the Terms and Conditions, implying that the terms mean different things, and interpreting them to mean the same thing would render one or the other term to be redundant.  *See, e.g.*, Docket No. 4, Ex. B, at 37 and 38 of 83.  Thus, basic principles of contract interpretation require that the terms termination and suspension be interpreted as having distinct meanings.  *See, e.g., Brinderson-Newberg Joint Venture*, 971 F.2d at 278-279 ("It is well settled that a contract should be interpreted so as to give meaning to each of its provisions…") (citing, inter alia, Restatement (Second) of Contracts § 203(a) cmt. b (1979)); *Continental Mfg. Corp. v. Underwriters at Lloyds London*, 185 Cal. App. 2d 545, 549 (1960) ("the contract is to be taken by its four corners and so construed as to give effect to every part of it, if possible.").  Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless.") (citations omitted) (citing, inter alia, 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 686, pp. 619-620); Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if

6

reasonably practicable, each clause helping to interpret the other.").

Fourth, Defendants have internal policies and practices that are different for a customer whose service is terminated versus one whose service is suspended.  1AC ¶¶ 20, 21. Thus, the parties' practice and usage also require that the terms termination and suspension be interpreted as having distinct meanings.  *See Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 778-779 (9th Cir. 2009) (the parties' practice and usage are appropriate aids to interpretation of an ambiguous contract).

Fifth, in other cases, courts have found a distinction between the terms suspension and termination.  *See, e.g.*, *Wolford v. Equitable Life Ins. Co.*, 162 Pa. Super. 259, 262 (Pa. Super. Ct. 1948) (interpreting contract and finding distinction between termination and suspension). Likewise, statutes routinely attribute different meanings to suspension and termination.  *See, e.g., Hamilton v. Dick*, 254 Cal. App. 2d 123, 125 (1967) ("Section 13101 defines 'revocation' as a **termination** of the person's driving privilege. Section 13102 defines '**suspension'** as the **temporary** withdrawal of the person's driving privilege.") (emphasis added); *McGough v. Pine Bluff Sch. Dist.*, 79 Ark. App. 235, 240 (Ark. Ct. App. 2002) (citing statute that distinguishes between suspension and termination in the employment context).

Sixth, even if MetroPCS had an undisclosed intent for the clause concerning termination also to cover suspension, that intent is not controlling.  *See Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("California recognizes the objective theory of contracts, under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation'.") (citation omitted).

### D.     Defendants Have Failed to Cure Their Breach.

Defendants could easily cure their breach, at least prospectively, by adopting one or more of the following policies or practices: (1) adjusting consumers' service cycles without charging an undisclosed fee; (2) prorating consumers' payments; (3) replacing and adding language in the Terms and Conditions to address this issue and allowing consumers to make informed decisions.

7

**E.      Defendants' Attempt to Blame the Consumer Lacks Merit.**

Defendants assert that Plaintiff did not perform his obligations because he did not pay a monthly service charge on or before May 14, 2013 and that he therefore cannot state a claim for breach of Contract and/or Declaratory relief. *See* MTD at 8-9. Defendants' assertions shamefully attempt to switch the blame to their customers for Defendants' own failures to cure their breach. Defendants' position also lacks merit for the following reasons.

First, Plaintiff did perform his obligation, which was to pay for service in advance. As noted, Defendants operate a ***pre-paid*** phone service, which requires that a customer pay in advance to receive service. *See* 1AC ¶ 16. Accordingly, if a customer wants to receive telecommunications services, then he or she must pay in advance for such services. It is impossible for a customer to make a "late payment" to Defendants because Defendants do not provide service until after a customer has pre-paid for that service.

Second, Defendants' position assumes that Plaintiff desired continuous service from April 14, 2013 through June 15, 2013. Defendants' assumption is incorrect. If Plaintiff had desired continuous service from one billing cycle to the next then he would have paid the service charge for an additional month of service prior to the end of his then current service cycle. In order to receive continuous service the customer must make payment before the end of the then current service cycle. However, the consumer has no obligation to make such payment before the end of the then current service cycle. Defendants are aware that "breaks" in service are typical, and even encourage them. Defendants purport to provide their "customers with "the freedom of being able to decide each month if [Defendant MetroPCS Wireless] will stay your provider . . . ." *See* 1AC ¶ 18. *See also* customer complaints (1AC, Ex. A).

Third, assuming *arguendo* that Plaintiff breached, the breach is inconsequential because Defendants elected to keep the contract alive and therefore were required to perform their obligations under the contract. This is a basic principle of contract law. *See Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 602 (1969) ("A breach does not terminate a contract as a matter of course but is a ground for termination at the option of the injured party. Thus a finding of termination is not one which must be implied from a finding of a breach.") (citing, inter

8

alia, Cal. Civ. Code §§ 1689 and 1691 and 1 Witkin, Summary of Cal. Law (1960) p. 296)

(citations omitted); *B. C. Richter Contracting Co. v. Continental Casualty Co.*, 230 Cal. App. 2d

491, 499-500 (1964) ("The general rule in California is . . . one who has been injured by a breach

of contract has an election to pursue any of three remedies, to wit:  He may treat the contract as

rescinded and may recover upon a quantum meruit so far as he has performed; *or he may keep the*

*contract alive, for the benefit of both parties, being at all times ready and able to perform*; or,

third, he may treat the repudiation as putting an end to the contract for all purposes of

performance, and sue for the profits he would have realized if he had not been prevented from

performing. . . . *Where his performance is not prevented, the injured party may elect instead to*

*affirm the contract and complete performance*. If such is his election, his exclusive remedy is an

action for damages.") (emphasis added; internal quotations and citations omitted).

Indeed, during the suspension of Plaintiff's service, when Plaintiff paid $40 for an

additional month of service, Defendants accepted that amount and restored his service.  Thus,

Defendants elected to keep the contract alive.  As a result, Defendants were obliged to perform all

of their contractual obligations, which in this case included providing Plaintiff with a full month

of service as specifically required by the Terms and Conditions.  This is black letter law.  *See*

*Whitney Inv. Co.*, 273 Cal. App. 2d at 602; *Chodos v. W. Publ. Co*., 292 F.3d 992, 1001 (9th Cir.

2002) (stating the California rule that "one who has been injured by a breach of contract has an

election to pursue any of three remedies," one of which is to "keep the contract alive, for the

benefit of both parties, being at all times ready and able to perform") (citing Alder v. Drudis, 30

Cal. 2d 372, 381-82 (1947)).  *See also id.* at 1001 ("Where [a party's] performance is not

prevented, the injured party may elect instead to affirm the contract and ***complete performance***.

If such is his election, his ***exclusive*** remedy is an action for damages.") (emphasis added).  *Cf.*

*Lang v. Todd*, 148 Neb. 726, 732 (Neb. 1947) ("in case he keeps the contract alive, it lives for the

benefit of both parties, and he remains subject to all of his obligations under it").

**III.   Plaintiff Has Stated a Cause of Action for Fraud.**

**A.      Plaintiff's Complaint Alleges Sufficient Facts in Support of His Fraud Claim.**

The complaint alleges sufficient facts in support of his fraud claim to withstand

9

Defendants' motion to dismiss.  The elements of a cause of action for fraud are:

(a)     *A misrepresentation consisting of either: (1) an affirmative misrepresentation* — the suggestion, as a fact, of that which is not true by one who does not believe it to be true; *(2) a concealment or half truth*—the suppression of a fact, by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or *(3) a false promise*—a promise made without any intention of performing it.  Cal. Civ. Code § 1710; *see also* Cal. Civ. Code § 1572.

(b)     *Knowledge of falsity or reckless disregard for the truth*:  A defendant may be liable for deceit without actual knowledge that the representation was false if the plaintiff can prove the defendant's reckless disregard for the truth. Cal. Civ. Code § 1710; *In re Cheryl E.*, 161 Cal. App. 3d 587, 599 (1984); *Wilke v. Coinway, Inc.*, 257 Cal. App. 2d 126, 136 (1967).

(c)     *Intent to induce reliance*:  The plaintiff must prove that the defendant acted to cause a change of position, and to induce action on the part of the party claiming fraud. *Nathanson v. Murphy*, 132 Cal. App. 2d 363, 369-70 (1955).  The essential element in a suit for deceit is not the intent to defraud. The vital element of the claim is the defendant's intent to induce action by another person in response to a misrepresentation.  *Ashburn v. Miller*, 161 Cal. App. 2d 71, 79 (1958).  Intent may be established by inference from the acts of the parties because direct proof of intent for fraud is often impossible.  *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 402 (1989).

(d)     *Justifiable reliance*: A party seeking relief from intentional deceit must prove that he or she relied on the defendant's misrepresentation.  *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-77 (1997).  Reliance may be proven by direct or circumstantial evidence.  The law will presume reliance when representations have been made and action taken thereafter.  *Vasquez v. Superior Court of San Joaquin County*, 4 Cal. 3d 800, 814 (1971).

(e)     *Resulting damage*:  Reliance on the misrepresentation must cause plaintiff damage.  *Nagy v. Nagy*, 210 Cal. App. 3d 1262, 1268 (1989).

The complaint alleges with particularity specific facts that support each of these elements, *i.e.*, misrepresentations, including facts that show how, when, where, to whom, and

10

by what means the misrepresentations were tendered, *see* 1AC ¶¶ 2, 15, 18, 19, 23-25, 27-29, 36, 48, 49 & Ex. B (Terms and Conditions of Service), Ex. C (Revised Terms and Conditions of Service), Ex. D (marketing materials) and Ex. E (service forms); knowledge of falsity or reckless disregard for the truth, *see* 1AC ¶¶ 20-22, 49 & Ex. A (examples of complaints); intent to induce reliance, *see* 1AC ¶¶ 20-22, 49; justifiable reliance, *see* 1AC ¶¶ 27-29, 35, 50, 51; and resulting damage, *see* 1AC ¶¶ 36, 51 (including facts that show the injury and damages suffered and their causal connection with plaintiff's reliance on the misrepresentations).  Thus, Plaintiff alleges facts sufficient to state a cause of action for fraud.

### B.  Defendants' Assertions Lack Merit.

Defendants assert that Plaintiff has not alleged (1) actionable misrepresentations and (2) justifiable reliance.  But Defendants position is fundamentally flawed.

First, Defendants' position relies upon a mischaracterization about what the Terms and Conditions state.  As noted above, the provision to which Defendants refer does <u>not</u> state "***in case of late payment***"; it states "[i]f your service is ***terminated***."  *See* 1AC, Ex. B, at 8.

Second, Defendants misconstrue Plaintiff's fraud claim.  Defendants assert that "[b]y definition, a MetroPCS customer who pays late has not paid in advance for next month's service," MTD at 11:9-10, but that misconstrues Plaintiff's claim.  Defendants have conducted, and continue to conduct, an advertising campaign representing to consumers that Defendants provide a month (*i.e.*, thirty (30) days) of service.  1AC ¶¶ 2, 18, 27.  Defendants know, however, that they do not provide a month (*i.e.*, thirty (30) days) of service in situations where a customer pays after service has been suspended.  *Id.* ¶¶ 2, 21-22, 48-49.  Defendants do not disclose that to their customers, despite knowing that their customers' service cycles are consistently less than thirty (30) days due to these policies and practices.  *Id.*

### IV.  Plaintiff Has Stated Claims Under the CLRA, FAL, and UCL.

First, Plaintiff has standing.  The complaint clearly pleads Plaintiff's reliance on Defendants' advertising.  The complaint alleges that in purchasing the phone and requesting telecommunication services from Defendant MetroPCS Wireless on April 14, 2013, Plaintiff relied on, *among other things*, marketing materials (attached to the 1AC as Exhibit D), and

11

service forms (attached to the 1AC as Exhibit E), all of which provided that customers would receive a month of service (*i.e.,* thirty (30) days) for a flat fee provided prior to the beginning of such month.  1AC ¶ 27 (emphasis added).  The complaint also alleges:  "Plaintiff and members of the Class relied on Defendants' false and/or misleading advertisements regarding the monthly service cycles and were induced by such advertisements to purchase telecommunication services from Defendants."  1AC ¶ 53.  *See also id.* ¶¶ 48, 50.

Second, Defendants' assertion that the practices at issue were fully disclosed in the Terms and Conditions lacks merit.  As explained above, this case concerns consumers whose service is **suspended**, whereas Defendants rely on language from the Terms and Conditions regarding termination.  Defendants' practices also contradict the following advertising:  "No hidden Fees….what you see is what you pay for…There are never any overage charges, hidden fees, penalty costs or surprise expenses."  *See* 1AC ¶¶ 15, 21.

Third, Plaintiff's complaint alleges justifiable reliance.  *See* 1AC ¶¶ 27-29, 35, 50, 51.

## V.   The Court Should Deny Defendants' Request to Strike the Class Allegations.

### A.   Plaintiff Has Properly Pled Class Allegations.

Defendants assert that a class cannot be maintained.  That lacks merit for several reasons.

First, at a minimum, Plaintiff can adequately represent all who, like himself, opted out of the arbitration agreement and suffered similar injury.  Defendants have not provided the Court any data on the numbers who opted out of the arbitration agreement.

Second, above and beyond Plaintiff's ability to represent all other individuals who, like himself, opted out of the arbitration agreement and suffered similar injury, Plaintiff can also adequately represent individuals who have not opted out of the arbitration agreement.  *See Coleman v. GMAC*, 220 F.R.D. 64, 91 (N.D. Tenn. 2004) ("class certification should not be denied merely because some class members may be subject to the defense that their claims are barred by valid documents releasing the defendant from liability") (citing cases); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (similar).  Courts have routinely held that the fact the some members of a putative class have signed arbitration agreements does not bar class certification.  *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) (the

12

fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification); *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 474 (C.D. Cal. 2012) (same).  *See also Mora v. Harley-Davidson Credit Corp.*, 2012 U.S. Dist. LEXIS 49636, 47-49 (E.D. Cal. Apr. 6, 2012) ("The existence of an arbitration agreement does not defeat class certification"); *Davis v. Four Seasons Hotel Ltd.*, 2011 U.S. Dist. LEXIS 112386 (D. Haw. Sept. 30, 2011) (citing "several courts [that] have addressed the effect of arbitration agreements among members of a putative class" to hold that arbitration agreements signed by some class member employees "does not bar class certification"); *Bittinger*, 123 F.3d at 884 (the fact that two-thirds of class members signed releases does not justify denial of class certification); *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989) (certifying class where some class members had signed arbitration agreements); *Midland Funding, LLC v. Brent*, 2010 U.S. Dist. LEXIS 117501 (N.D. Ohio 2010) ("[a]ny arbitration related defenses that Midland and MCM have to claims of certain class members may be dealt with pursuant to Fed. R. Civ. P. 23 at a later stage in the litigation, through the creation of subclasses, or by eliminating some members of the class.").

Third, the question of the enforceability of the arbitration agreement is not ripe.  *See Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir. 2000) (no case or controversy existed over enforceability of arbitration agreement where no party had yet sought to enforce the agreement).  Even if the Court were to find that the arbitration agreement is enforceable, Defendants cannot enforce it against putative class members who are not yet parties. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 55033, *28-29 (N.D. Cal. May 9, 2011) ("It does not appear . . . that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case because . . . putative class members are not parties to an action prior to class certification") (internal quotations and citation omitted); *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) ("[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis").

Fourth, in almost all cases, a motion to strike the class allegations is premature at the pleadings stage.  Courts routinely deny motions to strike class allegations as being premature at

13

the pleadings stage.  *See, e.g., Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *Werdebaugh v. Blue Diamond Growers*, 2013 U.S. Dist. LEXIS 144178, 55-56 (N.D. Cal. Oct. 2, 2013); *Collins v. Gamestop Corp.*, 2010 U.S. Dist. LEXIS 88878 (N.D. Cal. Aug. 6, 2010).  *See generally BJC Health System v. Columbia Casualty Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (noting that a motion to strike is "an extreme and disfavored measure").

Fifth, the Terms and Conditions of April 20, 2013 do not prohibit Defendants' customers from being class members in a class action in court.  Those Terms and Conditions assert:

> NO CLASS ACTIONS, CONSOLIDATED ACTIONS, REPRESENTATIVE ACTIONS, OR JOINDER OR CONSOLIDATION OF ANY DISPUTE WITH A DISPUTE OF ANY OTHER PERSON OR ENTITY, SHALL BE ALLOWED **IN ARBITRATION**. ALL PARTIES TO THE ARBITRATION PROCEEDING MUST ARBITRATE IN THEIR INDIVIDUAL CAPACITY ONLY AND MUST BE INDIVIDUALLY NAMED.

*See* 1AC, Ex. B, at 41 of 83 (emphasis added).  Defendants failed to include any provision in that version of the Terms and Conditions precluding a customer from being a class member in a lawsuit that a court has certified as a class action.  Therefore, at least for those consumers for whom the Terms and Conditions of April 20, 2013 apply, there is no contractual bar to being a class member in a class action in court.  *See Murphy*, 724 F.3d at 1234 (*expressio unius exclusio alterius est*); *Safeco Ins. Co.*, 26 Cal. 4th at 764 (similar); *Victoria*, 40 Cal. 3d at 745 (ambiguities in a written contract are to be construed against the drafter); *Meyers*, 79 Cal. App. 3d at 312 (ambiguities in a contract of adhesion must be construed against the drafter).

### B.   The Authorities Defendants Rely Upon Are Inapposite.

The cases Defendants cite in support of their motion to strike are unpersuasive here.  In *Pablo v. Servicemaster Global Holdings, Inc.*, 2011 U.S. Dist. LEXIS 87918 (N.D. Cal. Aug. 9, 2011), the court denied a renewed motion for class certification citing "the unique circumstances of this litigation" and the fact that the plaintiff's legal claims were particularly "complex."  The court found that "the evidence currently before the Court supports an inference that . . . a significant portion of this litigation would be devoted to discovering which class members signed such agreements."  *Id.* at *6.  In contrast, in this case, there is no evidence before the Court indicating that it would be difficult to determine which customers opted out of the agreement.

14

1        Moreover, all but two of the cases that Defendants cite in support of their motion to strike

2    are from class certification decisions, or after, which is consistent with the principle that a motion

3    to strike the class allegations is generally premature at the pleadings stage.  *See Pablo*, 2011 U.S.

4    Dist. LEXIS 87918 (N.D. Cal. Aug. 9, 2011) (denying class certification); *In re Apple & AT&T*

5    *Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011) (decertifying class); *Lozano v. AT&T*

6    *Wireless Servs.*, 504 F.3d 718 (9th Cir. 2007) (affirming denial of class certification); *SkySports v.*

7    *Superior Court*, 201 Cal. App. 4th 1363 (2011) (reversing order certifying class).

8        Indeed, only two of the cases that Defendants cite on this issue were decided before class

9    certification, and those two cases are distinguishable from this case in two critical respects.  In

10   both of those cases, (1) the named plaintiffs had signed arbitration agreements and (2) the courts

11   found those agreements to be enforceable.  *See May v. Nation Safe Drivers, Inc.*, 2010 U.S. Dist.

12   LEXIS 135671 (D. Minn. Dec. 22, 2010) (granting motion to dismiss and motion to strike where

13   named plaintiffs signed arbitration agreements and court found that they were enforceable);

14   *Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 640 (2010)

15   (sustaining demurrer and granting motion to strike class allegations where court found that the

16   named plaintiffs were subject to an enforceable arbitration agreement).  In contrast, in this case

17   there is no question that Plaintiff opted out of the arbitration agreement, and the question of

18   whether the agreement is enforceable as to any class members is not yet before the Court.

**CONCLUSION**

20       For the foregoing reasons, Plaintiff respectfully requests that the Court deny

21   Defendants' motion to dismiss and to strike.

22   DATED:  December 2, 2013        Respectfully submitted,

23                            THE TIDRICK LAW FIRM

24                            By:   /s/ Steven G. Tidrick

25                                  STEVEN G. TIDRICK, SBN 224760

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (1) TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND
(2) TO STRIKE THE CLASS ALLEGATIONS – *Abrams v. MetroPCS Communications, Inc. et al.*, 3:13-cv-02878-JSW