1   MICHAEL J. STORTZ (SBN #139386)
    michael.stortz@dbr.com
2   MATTHEW J. ADLER (SBN #273147)
    matthew.adler@dbr.com
3   DRINKER BIDDLE & REATH LLP
    50 Fremont Street, 20th Floor
4   San Francisco, CA  94105-2235
    Telephone:     (415) 591-7500
5   Facsimile:     (415) 591-7510

6   Attorneys for Defendants
    METROPCS COMMUNICATIONS, INC.;
7   METROPCS WIRELESS, INC.; and
    T-MOBILE US, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13  GEORGE ABRAMS, on behalf of himself       Case No. 3:13-cv-02878-JSW
    and all others similarly situated,
14                                            **CLASS ACTION**
                    Plaintiffs,
15                                            **DEFENDANTS' REPLY MEMORANDUM
            v.                                IN SUPPORT OF MOTION: (1) TO
16                                            DISMISS PLAINTIFF'S AMENDED
    METROPCS COMMUNICATIONS, Inc.;            COMPLAINT AND (2) TO STRIKE THE
17  METROPCS WIRELESS, Inc.;                  CLASS ALLEGATIONS**
    T-MOBILE US, Inc.; and Does 1-100,
18                                            Date:       January 17, 2014
                    Defendants.               Time:       9:00 a.m.
19                                            Dept.:      Courtroom 11
                                                          450 Golden Gate Ave., 19th Fl.
20                                                        San Francisco, CA
                                              Judge:      Hon. Jeffrey S. White
21
                                              Complaint filed:   June 21, 2013
22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION                    CASE NO. 3:13-CV-02878-JSW
TO DISMISS AND TO STRIKE

# <u>TABLE OF CONTENTS</u>

**Page**

I.    SUMMARY OF ARGUMENT/INTRODUCTION ................................................ 1

II.    ARGUMENT ................................................................................................ 2

    A.    Plaintiff Has Not Stated A Claim For Breach Of Contract Or Declaratory Relief. .......................................................................... 2

        1.    Plaintiff's Own Breach Precludes His Contract Claims. ........................... 2

        2.    Plaintiff's Unpled Theories Do Not Excuse His Failure To Perform, Nor Show Any Breach By Defendants. ....................... 4

        3.    Plaintiff's Theory Of "Refusal To Reset" Is Precluded By The Parties' Agreement. ............................................. 7

    B.    Plaintiff Has Not Stated A Plausible Claim For Fraud. ........................... 9

    C.    Plaintiff's CLRA, FAL and UCL Claims Fail To State A Plausible Claim For Relief. .............................................................. 11

        1.    Plaintiff Does Not Have Standing To Pursue His Statutory Claims. .......... 11

        2.    Plaintiff Does Not Address MetroPCS's Disclosures. .............................. 12

        3.    Plaintiff Has Not Alleged His Justifiable Reliance. .................................. 12

    D.    The Court Should Strike Plaintiff's Class Allegations. ......................... 12

III.    CONCLUSION .......................................................................................... 15

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE
- i -
CASE NO. 3:13-CV-02878-JSW

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Alder v. Drudis,*
   30 Cal. 2d 372 (1947) ................................................................................. 8, 9, 10

5

*In re Apple & AT&TM Antitrust Litig.,*
6   826 F. Supp. 2d 1168 (N.D. Cal. 2011) ........................................................... 14

7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................................... 13

8

*AT&T Mobility LLC v. Concepcion,*
9   131 S. Ct. 1740 (2011) ...................................................................................... 14

10

*B. C. Richter Contracting Co. v. Cont'l Cas. Co.,*
11   230 Cal.App.2d 491 (1964) ............................................................................ 9, 10

12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................... 13

13

*Carnacchi v. U.S. Bank Nat'l Ass'n ND,*
14   No. 11-6339, 2012 WL 4673746 (N.D. Cal. Oct. 1, 2012) ................................. 14

15

*Castagnola v. Hewlett-Packard Co.,*
16   No. 11-5772, 2012 WL 2159385 (N.D. Cal. Jun. 13, 2012) (White, J.) ................ 12

17

*Cattie v. Wal-Mart Stores, Inc.,*
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ............................................................... 11

18

*Chodos v. W. Publ. Co.,*
19   292 F.3d 992 (9th Cir. 2002) .................................................................. 5, 6, 8, 10

20

*Collins v. Gamestop Corp.,*
21   No. 10-1210, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) ................................. 13

22

*Consolidated World Investments, Inc. v. Lido Preferred Ltd.,*
   9 Cal.App.4th 373 (1992) .................................................................................. 1, 4

23

*In re Facebook PPC Adver. Litig.,*
24   Nos. 09-3043, 09-3519, 09-3430, 2010 WL 5174012 (N.D.Cal. Dec. 15, 2010) .................. 11

25

*Fisher v. Monster Beverage Corp.,*
26   No. 12-02188, 2013 WL 4804385 (C.D. Cal. July 9, 2013) ................................. 12

27

*Hoey v. Sony Elecs.,*
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ............................................................. 11

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE                          - ii -                    CASE NO. 3:13-CV-02878-JSW

*Jue v. Costco Wholesale Corp.*,
  No. 10-33, 2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ........................................................ 14

*Kazemi v. Payless Shoesource Inc.*,
  No. 09-5142, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) .................................................... 12

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................................................................. 11

*LiMandri v. Judkins*,
  52 Cal.App.4th 326 (1997) ................................................................................................... 10

*May v. Nation Safe Drivers, Inc.*,
  No. 10-2577, 2010 U.S. Dist. LEXIS 135671 (D. Minn. Dec. 22, 2010) ............................... 14

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd* 322 F. App'x 489 (9th Cir. 2009) ................... 11

*Ovieda v. Sodexo Operations LLC*,
  No. 12-1750, 2012 WL 1627237 (C.D. Cal. May 7, 2012) .................................................... 13

*Pablo v. ServiceMaster Global Holdings, Inc.*,
  No. 08-3894, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ................................................... 14

*Richard P. v. Vista Del Mar Child Care Serv.*,
  106 Cal.App.3d 860 (1980) ..................................................................................................... 9

*Sky Sports, Inc. v. Superior Court*,
  201 Cal.App.4th 1363 (2011) ......................................................................................... 14, 15

*Thorpe v. Abbott Labs. Inc.*,
  534 F. Supp. 2d 1120 (N.D. Cal. 2008) ................................................................................. 13

*Titan Grp., Inc. v. Sonoma Valley Cnty. Sanitation Dist.*,
  164 Cal.App.3d 1122 (1985) ................................................................................................... 5

*Wall St. Network, Ltd. v. New York Times Co.*,
  164 Cal.App.4th 1171 (2008) ............................................................................................. 2, 4

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
  187 Cal.App.4th 634 (2010) ................................................................................................. 14

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-2724, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) .................................................... 13

*Wolf v. Walt Disney Pictures & Television*,
  162 Cal.App.4th 1107 ............................................................................................................. 7

*Woods v. Google, Inc.*,
  889 F. Supp. 2d 1182 (N.D.Cal. 2012) ................................................................................. 11

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE
- iii -
CASE NO. 3:13-CV-02878-JSW

1  **STATUTES, RULES & REGULATIONS**

2  Federal Arbitration Act ................................................................................................. 14

3  Federal Rules of Civil Procedure, Rule 9(b) .................................................................. 11

4  Federal Rules of Civil Procedure, Rule 23 ..................................................................... 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE        - iv -        CASE NO. 3:13-CV-02878-JSW

## I.    SUMMARY OF ARGUMENT/INTRODUCTION

Plaintiff's opposition ignores the dispositive facts alleged in his Amended Complaint ("AC").  When Plaintiff first started his MetroPCS service, MetroPCS notified him in writing that the "[m]onthly due date" for his $40 service charge was the "14th" and that his "[n]ext payment due date" was "5-14-2013."  Plaintiff's Start of Service Form (Ex. E to AC).  That notification became part of his Agreement with MetroPCS, along with the MetroPCS Terms and Conditions of Service ("Terms and Conditions").  The latter further provided that "**Service Charges … must be paid in advance and are due before the first day of your service cycle.**"  Ex. B to AC at 8 (emphasis added).  Even so, "Plaintiff failed to pay his monthly service fee" on or before May 14.  AC at ¶ 33.   Yet his AC alleges that MetroPCS breached the Agreement by suspending his service for four days until he belatedly made payment on May 19, and by refusing to reset his monthly due date and service cycle to the 19th.  *Id.* at ¶ 36.

But MetroPCS was entitled to suspend Plaintiff's service, when Plaintiff breached by failing to pay by the agreed-upon date of May 14.  That result follows from California law, which requires that a party suing in contract establish his own performance.  *See Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal.App.4th  373, 380 (1992) ("where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired").  It also follows from the parties' Agreement, which provided that MetroPCS could suspend Plaintiff's service on his breach:

> **If you do not make all payments when they are due, you will be in default under this Agreement, and MetroPCS will be entitled to exercise any rights it may have under this Agreement, including the suspension or termination of Service to you.**

Terms and Conditions at 8 (emphasis added).  Nor was MetroPCS contractually obligated to reset his monthly due date or service cycle, or to re-negotiate any other terms of the parties' Agreement.  Plaintiff simply failed to perform and thereby breached, and has not alleged any conduct by MetroPCS that amounted to breach.  He has no plausible claim in contract.

These facts also defeat Plaintiff's clams sounding in fraud.  MetroPCS plainly did disclose to Plaintiff – and Plaintiff agreed – that he must pay for his next month's service by "5-14-2013,"

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE          - 1 -          CASE NO. 3:13-CV-02878-JSW

1  and thereafter by the 14th of each month.  MetroPCS further disclosed to Plaintiff – and he agreed

2  – that "[i]f you breach any portion of this Agreement (**including failing to pay your Service**

3  **Charges in full on time**), we may suspend, terminate or restrict your Service."  Terms and

4  Conditions at 8-9 (emphasis added)).  As for Plaintiff's claim that MetroPCS concealed that it

5  would "not reset" his service cycle, the Terms and Conditions specifically disclosed that

6  MetroPCS would not do so.  His claims should be dismissed without leave to amend.

7       Nor has Plaintiff provided any plausible explanation of how a putative class could be

8  based on the allegations of the AC, where the Terms and Conditions under which class members

9  would sue contains their agreement to arbitrate the dispute.  While Plaintiff has invoked the right

10  to opt out of the arbitration agreement to pursue his own individual claims, he has not alleged

11  facts showing the existence of any other person similarly situated.  And Plaintiff fails to address

12  in any meaningful way the cases that dismiss class allegations – or reverse prior orders granting

13  certification – where even some class members have agreed to arbitrate, rather than litigate, the

14  alleged claim.  The putative class allegations of the AC should be stricken, also without leave to

15  amend.

16                    **II.     ARGUMENT**

17  **A.     Plaintiff Has Not Stated A Claim For Breach Of Contract Or Declaratory Relief.**

18            **1.     Plaintiff's Own Breach Precludes His Contract Claims.**

19       To state a claim for breach of contract or declaratory relief, Plaintiff must plausibly allege

20  the second element of that claim: his own "performance or excuse for nonperformance * * *."

21  *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178 (2008) (citations,

22  quotations omitted).  Plaintiff asserts that the AC "alleges that Plaintiff performed."  Opp'n at 3,

23  citing AC at ¶¶ 27, 35, 42.  But paragraph 42 alleges that only as a legal conclusion.  *AC at ¶ 42.*

24  ("Plaintiff and  members of the Class have performed all obligations and conditions under the

25  Agreement").  And paragraphs 27 and 35 only confirm that Plaintiff failed to perform his

26  obligations under the Agreement.

27       Paragraph 27 of the AC alleges that on April 15, 2013, when Plaintiff started service with

28  MetroPCS at the Emeryville store, Plaintiff received a form attached as Exhibit E.  *See also* AC at

¶ 24 (the "Start of Service Request Form is typically filled out by the MetroPCS representative, as was the case with Plaintiff George Abrams.").

The form received by Plaintiff specified (under Plaintiff's name) that Plaintiff's next monthly charge was due on May 14, 2013, and that thereafter his monthly due date would be the 14th of each month:

Ex. E to AC (highlighting added).

This Start of Service form, including the monthly due date of the 14th, became part of Plaintiff's Agreement with MetroPCS. *See* Terms and Conditions (Ex. B) at 2 ("When you initiate Service with MetroPCS, you may receive a Start of Service form, this Agreement, and a brochure detailing the coverage available in your service area. These materials are part of your Agreement with MetroPCS."). Plaintiff acknowledges that his Start of Service form became part of his Agreement with MetroPCS. *See* AC ¶ 24 ("This Agreement, Start of Service form, if any, the terms included in the Rate Plan brochure(s) describing your plans and services . . . make up the complete agreement between you and us . . .,'" quoting Terms and Conditions at 2).

Plaintiff also acknowledges that he received notice of this monthly due date, and MetroPCS's right to suspend or terminate in the event Plaintiff failed to pay by the 14th:

> The date when Plaintiff purchased the telecommunications services was the date when Defendant MetroPCS created Plaintiff's anniversary date and started Plaintiff's "billing cycle." Based on Defendant MetroPCS Wireless' internal policies and procedures, **Defendant MetroPCS Wireless' set Plaintiff's billing cycle to end on or about May 14, 2013 and notified Plaintiff that a failure to pay his bill by May 14, 2013 for the next month of service would result in immediate suspension of his phone service.**

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE                    - 3 -                    CASE NO. 3:13-CV-02878-JSW

AC ¶ 30 (emphasis in original).

And in fact, MetroPCS repeatedly disclosed – and Plaintiff agreed – that MetroPCS had the right to suspend or terminate in the event of late payment.  Terms and Conditions at 8 ("**Service Charges … must be paid in advance and are due before the first day of your service cycle**." (emphasis added)); *see also id.* ("**If you do not make all payments when they are due, you will be in default under this Agreement, and MetroPCS will be entitled to exercise any rights it may have under this Agreement, including the suspension or termination of Service to you.**" (emphasis added)); *see also id.* at 8-9 ("[i]f you breach any portion of this Agreement (**including failing to pay your Service Charges in full on time**), we may suspend, terminate or restrict your Service." (emphasis added).

Despite these repeated disclosures and his own acceptance of the Agreement, "Plaintiff failed to pay his monthly service fee" on or before the agreed-upon date of May 14.  AC at ¶ 33. He therefore breached the Agreement, precluding any recovery on his claims for breach of contract and a judicial declaration that he is entitled to a full month's service.  *See Wall St. Network Ltd.*, 164 Cal.App.4th at 1178 (affirming judgment on plaintiff's claims for breach, where plaintiff failed to perform under the parties' agreement).

And on Plaintiff's breach, MetroPCS had no further obligation to provide service to him, under both the parties' Agreement, and California law.  *See* Terms and Conditions of Service (Ex. B to AC) at 8-9 ("[i]f you breach any portion of this Agreement (**including failing to pay your Service Charges in full on time**), we may suspend, terminate or restrict your Service.").  *See also Consolidated World Investments, Inc.*, 9 Cal.App.4th at 380 ("where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired").  Plaintiff's own failure to perform in and of itself precludes his claims in contract.

**2.    Plaintiff's Unpled Theories Do Not Excuse His Failure To Perform, Nor Show Any Breach By Defendants.**

In opposition, Plaintiff offers three new and different theories to explain how he might proceed in contract, when the very premise of his AC is that he breached.  Each of them is based

on facts not alleged in, or even contrary to, his AC. And each fails to show Plaintiff has stated a plausible claim in contract.

*First*, Plaintiff asserts that it somehow "impossible" for him or any other MetroPCS customer to breach. Opp'n at 8. What Plaintiff means by "impossible" is not entirely clear. He cites no legal authority for the novel proposition that he entered into an agreement that was somehow impossible for one side to breach. As for the facts alleged in his Amended Complaint, those do not indicate any impediment to Plaintiff paying by the May 14 due date, and instead alleges simply that "Plaintiff failed" to make payment by that date. AC ¶ 33. To the extent Plaintiff means that "pay in advance" precludes a monthly due date, that is directly contradicted by the parties' own Agreement, which specified the 14th as his monthly due date. Ex. E to AC. It also is contradicted by Plaintiff's own AC, which acknowledges that "monthly service charges for a customer's cell phone plan must be paid in advance and are due before the first day of your service cycle." AC at ¶ 16 ("MetroPCS Wireless informs its customers that monthly service cycles are 'approximately thirty (30) days long.'").

*Second*, Plaintiff asserts that he had some undisclosed "desir[e]" (Opp'n at 8) for service other than service continuing from April 15 to June 14. Whatever Plaintiff's desire, there is no allegation in the AC as to Plaintiff's subjective intent at the time of contracting. That is not surprising, as the objective terms of the parties' Agreement controls, rather than some undisclosed subjective intent. "It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Titan Grp., Inc. v. Sonoma Valley Cnty. Sanitation Dist.,* 164 Cal.App.3d 1122, 1127 (1985).

*Third*, Plaintiff takes the diametrically opposite position, acknowledging his failure to pay by May 14 was in breach. Opp'n at 8-9. According to Plaintiff, however, the subsequent decision of MetroPCS to accept his late performance and to reinstate his service after breach amounts to an election of remedies under California law. *See id*., citing *inter alia Chodos v. W. Publ. Co.*, 292 F.3d 992, 1001 (9th Cir. 2002). In particular, Plaintiff now asserts that MetroPCS elected "to affirm the contract and complete performance." *Id.* at 9, citing *Chodos*, 292 F.3d at 1001.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE                - 5 -                CASE NO. 3:13-CV-02878-JSW

1    Again, this new position is nowhere spelled out in Plaintiff's AC.  But even if it were, it

2  would not support a claim by Plaintiff for breach, for the road goes both ways.  If MetroPCS is

3  deemed to have affirmed the Agreement, then both parties – and not just MetroPCS – remain

4  subject to the Agreement, rather than some different and new arrangement that Plaintiff might

5  unilaterally "desire" to negotiate in place of the parties' existing Agreement.  *See Chodos*, 292

6  F.3d at 1001 (non-breaching party "may keep the contract alive for the benefit of **both parties**."

7  (emphasis added, citation omitted).

8    And considering the parties' Agreement, Plaintiff has not alleged acts on the part of

9  MetroPCS to support a plausible claim of breach.  Plaintiff alleges that MetroPCS breached by

10  suspending his service for four days.  AC ¶ 36 (alleging that Plaintiff did not have service for four

11  days until his belated May 19 payment).  But suspension of Plaintiff's service was repeatedly

12  specified in the Agreement as among the options available to MetroPCS in the event of Plaintiff's

13  breach.  *See, e.g.,* Terms and Conditions at 9 (if Plaintiff failed to pay "in full on time,"

14  MetroPCS "may suspend, terminate or restrict your Service.)"  As Plaintiff himself points out, the

15  word "suspend" means to "halt temporarily" (Opp'n at 5 (citation omitted)) – which is precisely

16  what Plaintiff alleges to have occurred to his service.

17    A similar analysis disposes of Plaintiff's claim that MetroPCS breached by commencing

18  his next service cycle on June 15.  AC at ¶ 36 (MetroPCS breached by commencing Plaintiff's

19  next service cycle "[o]n or about June 15, 2013" and not resetting to the 19th).  As set forth

20  above, the 14th of each month was specified in the parties' Agreement as Plaintiff's "monthly due

21  date" (Ex. E to AC), with the monthly service cycle commencing the next day, i.e., on the 15th.

22  Terms and Conditions at 8 (service charges due "before the first day of your service cycle").  If

23  MetroPCS is deemed to have elected to honor the Agreement for the benefit of both parties

24  (*Chodos*, 292 F.3d at 1001), then so too is Plaintiff bound to honor the Agreement – including the

25  portions of the Agreement that specified the 14th as his monthly due date, and the following day

26  as the first day of his service cycle.

27    In sum, and as Defendants explained in their moving papers, each step taken by

28  MetroPCS was specifically allowed under the parties' Agreement, not to mention California law.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE              - 6 -              CASE NO. 3:13-CV-02878-JSW

As we explained, "if the defendant did what it was expressly given the right to do, there can be no breach." *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1120 (citations omitted). Plaintiff has not addressed *Wolf* in opposition, or identified any alleged conduct on the part of MetroPCS that MetroPCS was not expressly given the right to do under the parties' Agreement.

### 3.   Plaintiff's Theory Of "Refusal To Reset" Is Precluded By The Parties' Agreement.

That leaves Plaintiff with the theory of breach actually alleged in his AC, but virtually ignored in his opposition[1] – specifically, that MetroPCS breached the parties' Agreement by refusing to renegotiate it. According to his AC, MetroPCS breached by refusing to "reset" Plaintiff's monthly service cycle to the 19th. *See* AC ¶ 36 (alleging MetroPCS policy of "not resetting a customer's bill cycle[2] when a customer has made a payment after the due date of such service.").

Plaintiff's claim that MetroPCS breached the parties' Agreement by "refus[ing] to reset" makes little sense, as nothing in the Agreement requires MetroPCS to reset or otherwise to renegotiate the Agreement in the event of Plaintiff's failure to pay. To the contrary, the Agreement specified the 14th as Plaintiff's monthly due date (Ex. E to AC); further specified that this payment was required "before the first day of your service cycle" (Terms and Conditions at 8); and further specified that his monthly service cycle was (not surprisingly) "approximately thirty (30) days long." *Ibid.; see also* AC at ¶ 18 (so alleging). If (as Plaintiff now avers) MetroPCS were deemed to have elected to have "kept alive" the Agreement notwithstanding

---

[1] Remarkably, Plaintiff's opposition somehow does not once mention the word "reset" – even though the purported refusal of MetroPCS to reset his service cycle runs throughout his AC. *See* AC ¶¶ 21, 29, 36, 48, 77 (alleging Defendants' "refusal to reset" service cycle dates).

[2] Plaintiff's AC and opposition cause needless confusion by using the phrase "bill cycle" or "billing cycle." That phrase does not appear in the Terms and Conditions or his Start of Service form. And indeed, the phrase is inapplicable to MetroPCS pre-paid service, as the customer agrees that he or she will not receive a bill at the end of the month, but instead will pay a flat fee in advance of the next service cycle. As noted in the text, the Terms and Conditions refer to Plaintiff's monthly service cycle.

Plaintiff's breach, then MetroPCS was fully entitled under the terms of that Agreement to maintain the same monthly due date and service cycle provided thereby. *E.g., Chodos*, 292 F.3d at 1001 (non-breaching party may "keep the contract alive, for the benefit of both parties").

Against this backdrop, Plaintiff's claim that MetroPCS wrongfully "refus[ed] to reset" is directly at odds with traditional notions of freedom of contract, and the very doctrine of election of remedies that Plaintiff himself now invokes. In the event of Plaintiff's failure to pay, MetroPCS was under no contractual duty to terminate the Agreement, much less negotiate a new agreement with Plaintiff that included a different due date and monthly service cycle. Instead, and as Plaintiff points out, in the event of his breach, MetroPCS could elect one of three remedies: rescission; affirmance of the contract; or termination.

> It is well settled in this state that one who has been injured by a breach of contract has an election to pursue any of three remedies, to wit: He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing.

*Chodos*, 292 F.3d at 1001, quoting *Alder v. Drudis*, 30 Cal. 2d 372, 381-382 (1947). The parties' Agreement also specified that in the event of Plaintiff's non-payment, MetroPCS could either suspend or terminate his service.[3]

MetroPCS accordingly had no obligation under the parties' Agreement to terminate the Agreement, much less to negotiate a new agreement that would "reset" Plaintiff's monthly due date or service cycle. Indeed, the Agreement and California law both permitted MetroPCS alternative remedies. And if we accept Plaintiff's premise that MetroPCS elected to keep the Agreement alive, it follows that MetroPCS was wholly entitled to keep all terms of the Agreement alive, including Plaintiff's monthly due date of the 14th, and a monthly service cycle commencing the following day. Indeed, under Plaintiff's own authority, on electing its remedy,

---

[3]    "If you do not make all payments when they are due, you will be in default under this Agreement, and MetroPCS will be entitled to exercise any rights it may have under this Agreement, including the suspension or termination of Service to you." Terms and Conditions at 8.

1  MetroPCS was obligated to adhere to that election, and could not simultaneously both keep the

2  Agreement alive and also terminate the Agreement and negotiate a new one.  *B. C. Richter*

3  *Contracting Co. v. Cont'l Cas. Co.,* 230 Cal.App.2d 491, 500 (1964) ("[T]he injured party may

4  elect instead to affirm the contract and complete performance.  If such is his election, his

5  exclusive remedy is an action for damages.") (citation omitted); *accord Alder,* 30 Cal. 2d at 381-

6  383 (confirming doctrine of election of remedies).

7        Plaintiff has not and cannot state facts showing a plausible claim for breach of the parties'

8  Agreement, or for declaratory relief under that Agreement.

9  **B.     Plaintiff Has Not Stated A Plausible Claim For Fraud.**

10        Defendants established in their moving papers that MetroPCS disclosed to Plaintiff the

11  very point that he claims was concealed, namely, that "**your service cycle anniversary date will**

12  **not change resulting in fewer days of service for that month**."  Terms and Conditions at 8.

13  Plaintiff takes issue with the adequacy of this disclosure, contending that it is limited to instances

14  where MetroPCS elects to terminate the existing agreement, rather than suspend service.  Opp'n

15  at 2.  Plaintiff charges that MetroPCS fraudulently concealed from him that his service cycle

16  would not reset, when Plaintiff subsequently chose not to pay his service charge on May 14, and

17  MetroPCS later accepted his tardy payment on May 19.

18        But again, this unpled theory would not state a claim for relief, on four grounds.  ***First,*** the

19  duty to disclose only relates to facts at the time of contracting, not future events.  *See, e.g.,*

20  *Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal.App.3d 860, 865 (1980) ("[T]o constitute

21  ground for relief," a fraudulent representation or concealment "must be as to existing and material

22  facts; predictions of future events are ordinarily considered nonactionable expressions of

23  opinion.") (citations omitted).  That Plaintiff would subsequently fail to pay by May 14 is the

24  epitome of a contingent future event, rather than a fact existing and known to MetroPCS at the

25  time of contracting.  So is Plaintiff's subsequent decision to pay for his service on May 19, rather

26  than abandon his MetroPCS service as he was free to do.  As for MetroPCS's response to

27  Plaintiff's breach, MetroPCS did disclose – repeatedly – that it reserved all rights to suspend or to

28  terminate his service if Plaintiff chose to breach.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE              - 9 -              CASE NO. 3:13-CV-02878-JSW

***Second*,** Plaintiff has failed to state specific facts plausibly showing that MetroPCS had a duty to disclose in this context.  MetroPCS did not stand in a fiduciary relationship to Plaintiff, nor is it alleged (or even suggested) that MetroPCS somehow had any knowledge, much less the requisite exclusive knowledge, of any plan on the part of Plaintiff to breach on May 14, or to pay on May 19.  *See LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997) (no duty to disclose absent a fiduciary relationship or defendant's "exclusive knowledge").

***Third*,** the putative disclosure that Plaintiff proposes that MetroPCS was required to make is flatly incorrect as a matter of California law, as well as contrary to the parties' Agreement.  As Plaintiff himself contends, on suspending and then subsequently reinstating service, MetroPCS elected to keep the Agreement alive.  Opp'n at 8-9, citing *Chodos* and *B. C. Richter, supra.*  The corollary is that MetroPCS could not honor the Agreement and continue performance thereunder, while at the same time terminating the same Agreement and negotiating a new agreement with a later monthly due date and service cycle.  *See B. C. Richter Contracting Co.*, 230 Cal.App.2d at 500 (on electing "to affirm the contract and complete performance," non-breaching party's "exclusive remedy" is damages under the contract); *accord Alder*, 30 Cal. 2d at 381 (breaching party could not both "keep the contract alive" and "pu[t] an end to the contract for all purposes of performance").

As a result, it would be inaccurate under California law for MetroPCS to have made any disclosure about any putative new agreement in the event of Plaintiff's breach, if (as Plaintiff alleges) MetroPCS intended to honor the existing Agreement if Plaintiff belatedly performed.  In that event, both Plaintiff and MetroPCS remained bound by the existing Agreement.  *See Chodos*, 292 F.3d at 1001 (on election to keep contract alive, the contract remains operative "for the benefit of both parties.").

***Fourth*,** to the extent Plaintiff had an undisclosed desire to terminate his existing Agreement at the time of his May 14 breach, and then to negotiate a new agreement with a later due date and service cycle, MetroPCS specifically disclosed to him that this would not occur.  MetroPCS identified, and Plaintiff agreed, that his **"service cycle anniversary date will not change resulting in fewer days of service for that month**."  Terms and Conditions at 8

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE                    - 10 -                    CASE NO. 3:13-CV-02878-JSW

1   (emphasis added).  As a result, Plaintiff has not and cannot state a claim for fraud.  *Woods v.*

2   *Google, Inc.,* 889 F. Supp. 2d 1182, 1195-96 (N.D.Cal. 2012); *In re Facebook PPC Adver. Litig.*,

3   Nos. 09-3043, 09-3519, 09-3430, 2010 WL 5174012, at *6 (N.D.Cal. Dec. 15, 2010) (plaintiff

4   cannot show justifiable reliance, in light of contractual disclosures).

5   **C.    Plaintiff's CLRA, FAL and UCL Claims Fail To State A Plausible Claim For Relief.**

6          Plaintiff provides even less analysis to support his remaining claims under the Unfair

7   Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act

8   ("CLRA").  And to be fair, those claims, all of which sound in deception, fail for the same

9   reasons that his claim in fraud fails.  Plaintiff has not pled specific facts sufficient to proceed on

10  these claims for relief.  *See, e.g., Hoey v. Sony Elecs.,* 515 F. Supp. 2d 1099 (N.D. Cal. 2007)

11  (dismissing CLRA and fraud claims for failure to allege fact showing duty to disclose);

12  *Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd* 322 F. App'x 489

13  (9th Cir. 2009) (dismissing CLRA, UCL and fraud claims for failure to allege facts showing duty

14  to disclose).

15         But as set forth in Defendants' moving papers, Plaintiffs' statutory claims fail for

16  additional reasons, none of which Plaintiff has adequately addressed.

17         **1.    Plaintiff Does Not Have Standing To Pursue His Statutory Claims.**

18         To have standing to challenge Defendants' advertising under these statutes, Plaintiff must

19  plead "that [he] relied on Defendants' advertisements in entering into the transactions."  *Laster v.*

20  *T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *see also Cattie v. Wal-Mart*

21  *Stores, Inc*., 504 F. Supp. 2d 939, 946-947 (S.D. Cal. 2007) (dismissing false advertising claims

22  under CLRA).

23         While paying lip service to the specificity requirements of Rule 9(b), Plaintiff honors

24  those requirements only in the breach when it comes to his claims under California statute.  His

25  AC identifies no specific advertisement that Plaintiff reviewed or relied upon.  He therefore lacks

26  standing to assert the claims alleged in his AC, challenging Defendants' putative "advertising

27  campaign."  AC ¶ 2.

28

### 2.      Plaintiff Does Not Address MetroPCS's Disclosures.

As set forth in Defendants' moving papers, dismissal of fraud claims under the UCL, FAL and CLRA is warranted where "the challenged practices were disclosed to the plaintiffs and, thus, could not have been misleading" to the reasonable consumer.  *Castagnola v. Hewlett-Packard Co.*, No. 11-5772, 2012 WL 2159385, at *10-11 (N.D. Cal. Jun. 13, 2012) (White, J.) (numerous citations omitted) (dismissing UCL and CLRA claims based on disclosure of offer details). Plaintiff provides no response in his opposition, and does not even mention the *Castagnola* decision or the analytical framework set forth therein.  Nor does he explain why a reasonable consumer would believe that MetroPCS had a "duty to reset" the monthly due date or service cycle, in the event of failure to pay by the monthly due date, when both California law and the Terms and Conditions are to the contrary.  This defeats his UCL, FAL and CLRA claims.

### 3.      Plaintiff Has Not Alleged His Justifiable Reliance.

Plaintiff now argues (but does not plead in his AC) that at the time of contracting, he had an undisclosed intent to terminate his service on May 14, and to later obtain a reset of his monthly service cycle to whenever Plaintiff ultimately chose to pay.  But in that circumstance, Plaintiff would be entering into a new agreement, not the Agreement he entered into on April 15, which required his payment on the 14th of each month, before his service cycle commenced.  And MetroPCS specifically disclosed to him that in the event of termination, his **"service cycle anniversary date will not change resulting in fewer days of service for that month**."  Terms and Conditions at 8 (emphasis added).  Against this disclosure, Plaintiff cannot show that his putative reliance was justifiable, thereby precluding his statutory claims.  *See Fisher v. Monster Beverage Corp.*, No. 12-02188, 2013 WL 4804585, at *11 (C.D. Cal. July 9, 2013).

### D.      The Court Should Strike Plaintiff's Class Allegations.

Plaintiff argues that Defendant's motion to strike should be denied on several grounds, each of which fails.

First, Plaintiff argues that the motion is premature, but in fact, the motion is ripe for determination.  Striking class allegations at the pleadings stage is warranted if the putative class complaint on its face shows that the requirements of Rule 23 cannot be satisfied.  *See Kazemi v.*

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE         - 12 -         CASE NO. 3:13-CV-02878-JSW

*Payless Shoesource Inc.*, No. 09-5142, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (citation omitted) (holding that a defendant "may move to strike class action allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").[4]  A putative class representative cannot advance to discovery by stating no more than "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Ovieda v. Sodexo Operations LLC*, No. 12-1750, 2012 WL 1627237, at *1 (C.D. Cal. May 7, 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (in putative class action "against America's largest telecommunications firms," holding that a plaintiff must state a plausible – not merely conceivable – claim to reach discovery).

        Next, Plaintiff argues that he should be allowed to represent any other customers who planned to breach and desired MetroPCS to reset their service cycle on the one hand, and who on the other also opted out of the arbitration agreement. Opp'n at 12.  But Plaintiff has alleged no facts showing that any other such persons exist, or that such a putative class would be readily ascertainable.  His proposal for discovery on those topics puts the cart before the horse.  "Class allegations must be supported by sufficient factual allegations demonstrating that the class device

_____

[4]  Plaintiff cites three cases from this district in support his argument that Defendant's motion to strike is premature, all of which are distinguishable because, in those cases, the defendants argued that the class allegations should be rejected for reasons beyond those apparent from the face of the complaint.

        The first, *Thorpe v. Abbott Labs. Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) found that "a motion for class certification is a more appropriate vehicle for the arguments Abbott advances herein" because the arguments Abbott advanced relied on matters outside the pleadings, specifically another action pending in a different court.  *See Thorpe*, 534 F. Supp. 2d at 1122-1123.

        Similarly, in *Werdebaugh v. Blue Diamond Growers*, No. 12-2724, 2013 WL 5487236, at *15-16 (N.D. Cal. Oct. 2, 2013), the court declined to strike class allegations where defendant argued that a conflict-of-laws analysis would prohibit the class, but the question required an intensively fact-specific inquiry.

        Finally, in *Collins v. Gamestop Corp.*, No. 10-1210, 2010 WL 3077671, at *2-3 (N.D. Cal. Aug. 6, 2010), the court did strike portions of plaintiff's class allegations without leave to amend where it was apparent from the face of the complaint that plaintiff did not have standing to assert certain claims, while finding that other class allegations could not be dismissed based on the pleadings.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE                                   - 13 -                    CASE NO. 3:13-CV-02878-JSW

1    is appropriate and discovery on class certification is warranted." *Jue v. Costco Wholesale Corp.*,

2    No. 10-33, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010).  *See also Carnacchi v. U.S. Bank*

3    *Nat'l Ass'n ND*, No. 11-6339, 2012 WL 4673746, at *4 (N.D. Cal. Oct. 1, 2012) (dismissing class

4    allegations for failure "to allege facts sufficient to support any of the class action prerequisites * *

5    *.").

6          Plaintiff then reverses course and argues that his proposed class might encompass all

7    MetroPCS customers, apparently on the ground that the validity of the arbitration clause "is not

8    yet before the court."  Opp'n at 15.  But Plaintiff could not and does not have standing to

9    challenge the validity of MetroPCS's arbitration agreement, as he invoked his right to opt out of

10   arbitration.  *See Sky Sports, Inc. v. Superior Court*, 201 Cal.App.4th 1363, 1368-69 (2011)

11   (plaintiff not party to arbitration agreement could not proceed with class on behalf of customer

12   subject to such agreements).  Nor has he shown any basis for the Court to assume that other

13   customers might have preferred class litigation to consumer-friendly arbitration as available

14   through the MetroPCS arbitration agreement.  And indeed, any such default presumption would

15   be contrary to the policy underlying the Federal Arbitration Act.  *E.g., AT&T Mobility LLC v.*

16   *Concepcion*, 131 S. Ct. 1740, 1745-50 (2011) (the FAA reflects a "liberal federal policy favoring

17   arbitration.") (quotation and citation omitted).

18         Finally, Plaintiff attempts to distinguish Defendants' authorities, but his points of

19   distinction are irrelevant.  *See* Opp'n at 14-15.  The fact that some of the cases to which

20   Defendants cite are decertification cases in which courts reversed prior certification decisions on

21   arbitration grounds simply underscores the futility of the class allegations here.  *See, e.g., In re*

22   *Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011); *Pablo v. ServiceMaster*

23   *Global Holdings, Inc.*, No. 08-3894, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011).  Plaintiff

24   would distinguish *May v. Nation Safe Drivers, Inc.*, No. 10-2577, 2010 U.S. Dist. LEXIS 135671

25   (D. Minn. Dec. 22, 2010) and *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal.App.4th

26   634, 640 (2010), cases in which the court struck class allegations prior to certification, because in

27   those cases the lead Plaintiffs had not opted out of the arbitration agreements.  Opp'n at 15.

28   However, that was exactly the scenario examined in *Sky Sports*, when the lead plaintiff failed to

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE          - 14 -          CASE NO. 3:13-CV-02878-JSW

1   narrow the class to only those individuals who opted out and the Court found he could not assert

2   arguments contrary to the arbitration agreement to which he was not a party.  *See* 201

3   Cal.App.4th at 1368-69.

4        Accordingly, it is apparent from the face of the Amended Complaint that Plaintiff can

5   state neither a "class" nor an "action" on behalf of the putative class members who remain bound

6   by the arbitration clause.  For these and all of the other foregoing reasons, Defendant respectfully

7   asks this Court to strike Plaintiff's class allegations.

8                          **III.    CONCLUSION**

9        The Court should grant Defendants' motions, without leave to amend.

10   Dated: December 13, 2013                    DRINKER BIDDLE & REATH LLP

11

12                                              By: */s/ Michael J. Stortz*
                                                    Michael J. Stortz
13

14                                              Attorneys for Defendants
                                                METROPCS COMMUNICATIONS, INC.;
15                                              METROPCS WIRELESS, INC.; and
                                                T-MOBILE US, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AND TO STRIKE                 - 15 -         CASE NO. 3:13-CV-02878-JSW